Approved: _____
DEREK WIKSTROM
Assistant United States Attorney

20-MJ-11962

Before:   THE HONORABLE PAUL E. DAVISON
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - X
                                  :  **SEALED COMPLAINT**
UNITED STATES OF AMERICA          :
                                  :  Violations of 18 U.S.C.
   - v. -                         :  §§ 1349, 1344, 1028A,
                                  :  and 2
JUAN JAMES AYBAR, and             :
                                  :
RAMON FIGUEROA,                   :  COUNTY OF OFFENSE:
                                  :  WESTCHESTER
            Defendants.           :
                                  :
- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

     ANTHONY GIATTINO, being duly sworn, deposes and says that he is a Special Agent with the United States Postal Service, Office of the Inspector General ("USPS-OIG"), and charges as follows:

**COUNT ONE**
(Conspiracy to Commit Bank Fraud)

     1.   From at least in or about December 2018 up to and including at least in or about September 2019, in the Southern District of New York and elsewhere, JUAN JAMES AYBAR and RAMON FIGUEROA, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

     2.   It was a part and object of the conspiracy that JUAN JAMES AYBAR and RAMON FIGUEROA, the defendants, and others known and unknown, willfully and knowingly would and did execute and attempt to execute a scheme and artifice to defraud financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property

owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
(Bank Fraud)

3. From at least in or about December 2018 up to and including at least in or about September 2019, in the Southern District of New York and elsewhere, JUAN JAMES AYBAR and RAMON FIGUEROA, the defendants, willfully and knowingly did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, AYBAR and FIGUEROA deposited fraudulent, forged, and/or altered checks into bank accounts they controlled, without being authorized to deposit the checks, and then withdrew or attempted to withdraw funds from those accounts.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT THREE
(Aggravated Identity Theft)

4. From at least in or about December 2018 up to and including at least in or about September 2019, in the Southern District of New York and elsewhere, JUAN JAMES AYBAR and RAMON FIGUEROA, the defendants, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, AYBAR and FIGUEROA deposited fraudulent, forged, and/or altered checks using the banking information of third parties during and in relation to the bank fraud charged in Counts One and Two of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

5. I am a Special Agent with the USPS-OIG. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, my conversations with other law enforcement officers and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during the investigation. Where the contents of documents or the actions, statements, or conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Background re the Investigation

6. In or about July 2019, the USPS-OIG received complaints that checks placed in the outgoing mailbox of a certain apartment building in Bronxville, New York (the "Bronxville Building") had been intercepted and fraudulently altered. Based on my interview with one of those complainants (the "Bronxville Victim"), and my review of records from a certain national financial institution ("Bank-1"), I have learned, among other things, the following:

   a. On or about July 3, 2019, the Bronxville Victim placed a check ("Check-1") in an outgoing mailbox at the Bronxville Building. The check was made out to the United States Veterans' Administration, in an amount of less than $100.

   b. On or about July 3, 2019, Check-1 was deposited at an Automated Teller Machine ("ATM") located at a Bank-1 branch in Yonkers, New York, into a certain Bank-1 account ("Account-1").

   c. An image of Check-1, as deposited, was provided by Bank-1. That image reflects that Check-1 was made out to the name on Account-1 and was payable in an amount of $4,500. That amount was withdrawn from Account-1, resulting in a loss to Bank-1.

   d. An ATM photo taken during the deposit on or about July 3, 2019 shows that Check-1 was deposited by the man subsequently identified as JUAN JAMES AYBAR, the defendant.

3

The Bank Fraud

7.     Following the complaints from the Bronxville Building, USPS-OIG and the United States Postal Inspection Service ("USPIS") opened an investigation. Based on my involvement in that investigation, I have learned that JUAN JAMES AYBAR and RAMON FIGUEROA, the defendants, engaged in a scheme to defraud banks by depositing fraudulent, forged, and/or altered checks at ATMs into bank accounts that were in the names of third parties, but that were controlled by the defendants. The defendants then withdrew, or attempted to withdraw, the funds in cash.

8.     During the course of this investigation, I have reviewed records produced by, and have had conversations with employees at, Bank-1. Based on those conversations and records I have learned, among other things, the following:

   a. The deposits of Bank-1 are insured by the Federal Deposit Insurance Corporation.

   b. In or about December 2018, four checks in the total amount of approximately $12,000 (collectively, "Check-2") were deposited into a Bank-1 account ("Account-2") at various Bank-1 ATMs. The checks were later identified by Bank-1 as altered and/or counterfeit, and were returned. ATM photos of two of these deposits, taken on or about December 26, 2018 at a Bank-1 branch in the Bronx, New York and on or about December 27, 2018 at a Bank-1 branch in New York, New York, reflect that the deposits were made by the man subsequently identified as JUAN JAMES AYBAR, the defendant.

   c. On or about May 20, 2019, a check in the amount of $899 ("Check-3") was deposited into a Bank-1 account ("Account-3") via mobile deposit. The check was identified by Bank-1 as altered and/or counterfeit, and was returned.

   d. On or about June 6, 2019, a check in the amount of $4,381.26 ("Check-4") was deposited into Account-3 at a Bank-1 ATM in Yonkers, New York. The check was later identified by Bank-1 as altered and/or counterfeit, and was returned. An ATM photo reflects that the deposit was made by the man subsequently identified as RAMON FIGUEROA, the defendant.

   e. On or about May 30, 2019, $500 was transferred from Account-3 into another Bank-1 account ("Account-4"). On or about May 30, 2019, $202.75 was withdrawn from Account-4 at a non-Bank-1 ATM located in the Bronx, New York.

f. In or about May and June 2019, five checks in the total amount of approximately $15,000 (collectively, "Check-5") were deposited into Account-4. The checks were later identified by Bank-1 as altered and/or counterfeit, and were returned. An ATM photo from one of these deposits, taken by a Bank-1 ATM in Yonkers, New York, reflects that the deposit was made by the man subsequently identified as JUAN JAMES AYBAR, the defendant.

g. On or about June 12, 2019, a check in the amount of $9,986 ("Check-6") was deposited at a Bank-1 ATM in Yonkers, New York into Account-1. The check was later identified by Bank-1 as altered and/or counterfeit, and was returned. An ATM photo reflects that the deposit was made by the man subsequently identified as JUAN JAMES AYBAR, the defendant.

h. In or about August and September 2019, three checks in the total amount of approximately $16,000 (collectively, "Check-7") were deposited into a Bank-1 account ("Account-5"). The checks were later identified by Bank-1 as altered and/or counterfeit, and were returned.

i. On or about September 9, 2019, approximately $2,000 in cash was withdrawn from Account-5 at a Bank-1 ATM in Little Ferry, New Jersey. An ATM photo reflects that this withdrawal was made by the man subsequently identified as JUAN JAMES AYBAR, the defendant.

j. On or about September 11, 2019, a check in the amount of $1,395 ("Check-8") was deposited into a Bank-1 Account ("Account-6") at a Bank-1 ATM in Yonkers, New York. The check was later identified by Bank-1 as altered and/or counterfeit, and was returned.

k. On or about September 13, 2019, a check in the amount of $9,800 ("Check-9") was deposited into Account-6 at a Bank-1 ATM in Yonkers, New York. The check was later identified by Bank-1 as altered and/or counterfeit, and was returned. An ATM photo reflects that this deposit was made by the man subsequently identified as JUAN JAMES AYBAR, the defendant.

l. Account-1, Account-3, Account-4, Account-5, and Account-6 are all associated with the same contact phone number in Bank-1's records. Account-2 is associated with a different phone number, but based on my review of records produced by T-Mobile, I have learned that the subscriber name for that phone number is the same as the subscriber name for the phone number that is associated with the other accounts.

          m. In Bank-1's records, a certain email address ("Email-1") is associated with Account-1 and Account-3; a different email address ("Email-2") is associated with Account-4; another different email address ("Email-3") is associated with Account-5; and another different email address ("Email-4") is associated with Account-6.

          9.    Based on my review of records produced by Google, I have learned, among other things, that a certain IP address (the "IP Address") was used to log into Email-1 repeatedly between June and October 2019. The IP Address was also used to log into Email-2, Email-3, and Email-4.

          10.    Based on my review of records produced by Verizon, I have learned that the IP Address is associated with a certain apartment in the Bronx (the "Bronx Apartment").

          11.    Based on my review of information contained in databases of public records and criminal history used by law enforcement, I have learned that JUAN JAMES AYBAR's home address is the address of the Bronx Apartment.

          12.    A Postal Inspector with the USPIS who is involved in this investigation interviewed a number of payors associated with the checks described above. Based on my discussions with that Postal Inspector about those interviews, and my review of related reports, I have learned, among other things, that the USPIS interviewed the payor on Check-4, two of the payors on checks included in Check-5, the payor on Check-6, one of the payors on a check included in Check-7, the payor on Check-8, and the payor on Check-9. Each of these payors confirmed that they did not write checks to the holders of the accounts to which those checks were deposited (as described above), and that the images of their checks provided by Bank-1 contained different payees and dollar amounts than the original checks they had written.

Identification of the Defendants

          13.    I have compared surveillance images discussed above of the person depositing Check-1, Check-2, Check-6, and Check-9, and making withdrawals from Account-4 and Account-5, with records maintained by the New York City Police Department for JUAN JAMES AYBAR, the defendant. Based on that comparison, I believe that the person in the surveillance images for each transaction is AYBAR.

14. I have compared the surveillance image discussed above of the person depositing Check-4 with records maintained by the New Jersey Department of Motor Vehicles for RAMON FIGUEROA, the defendant. Based on that comparison, I believe that the person in the surveillance image for that transaction is FIGUEROA.

WHEREFORE, the deponent respectfully requests that JUAN JAMES AYBAR and RAMON FIGUEROA, the defendants, be arrested, and imprisoned or bailed, as the case may be.

/s/ Anthony Giattino (credentials inspected, # 1014)
ANTHONY GIATTINO
Special Agent
United States Postal Service - Office of Inspector General

Sworn to me through the transmission of this Complaint by reliable electronic means, pursuant to Federal Rule of Criminal Procedure 4.1, this

_6_ day of November, 2020 (via Skype)

THE HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7